**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

PATRICIA L. ARMSTRONG,            )
                                  )
           Plaintiff,             )
                                  )
v.                                )   Case No. CIV-12-195-FHS-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
           Defendant.             )

**REPORT AND RECOMMENDATION**

Plaintiff Patricia L. Armstrong (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 13, 1966 and was 44 years old at the time of the ALJ's decision.  Claimant obtained her GED.  Claimant has worked in the past as a housekeeper, cafeteria worker, and packer/assembler.  Claimant alleges an inability to work beginning March 31, 2009 due to limitations resulting from bulging discs in her cervical spine, problems with an arm, and headaches.

**Procedural History**

On September 9, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On October 13, 2010, an administrative hearing was held before ALJ Trace Baldwin in Poteau, Oklahoma.  On December 21, 2010, the ALJ issued an unfavorable decision on Claimant's application.  The Appeals Council denied review of the ALJ's decision on March 15, 2012.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) engaging in a faulty credibility analysis; and (2) finding Claimant retained the RFC to perform light work.

### Credibility and RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the cervical

4

spine and carpal tunnel syndrome. (Tr. 13). He also found Claimant retained the RFC to perform light work. (Tr. 14). After consultation with a vocational expert, the ALJ determined the grids mandated a finding of not disabled. (Tr. 18).

Claimant contends that the ALJ's credibility analysis was deficient. In April of 2006, Claimant underwent fusion surgery to correct a large disc herniation on the right at C6-7. The surgery was performed by Dr. Arthur Johnson. (Tr. 193). In November of 2006, Claimant reported a marked improvement in her symptoms since surgery but was still experiencing persistent pain in her upper back and lower neck sometimes radiating into the base of her skull causing headaches. She had good strength bilaterally. Her reflexes were 2/4 bilaterally with spasms and stiffness in her upper back and lower neck. Claimant was "improving well and [could] return to work at full status." Claimant was using non-narcotic pain medication and muscle relaxants. (Tr. 209).

By May of 2007, Dr. Johnson found Claimant had reached maximum medical improvement. Since it was a worker's compensation injury, he gave Claimant a permanent impairment disability rating of 12 percent to the body as a whole. (Tr. 291). Dr. Johnson released Claimant in August of 2007. (Tr. 205).

Claimant returned to her work as a housekeeper in a hospital

until March 31, 2009. (Tr. 130). In November of 2007, Claimant was attended by Dr. Andrew Olshen. Claimant told Dr. Olshen she was released to work with a lifting restriction of 20 pounds and no pushing or pulling greater than 35 pounds. She continued to have ongoing posterior cervical pain across her shoulders and headaches from the back of her head to her eyes. Claimant complained of muscle spasms and swelling in the posterior cervical spine, estimating her worst pain at an 8 out of 10. Her pain worsened with overhead lifting. Claimant experienced trouble sleeping. Dr. Olshen noted palpable muscle spasms in her posterior cervical paraspinal muscles and in her levator scapula and supraspinatus muscles. But Claimant's strength was 5/5 bilaterally. He noted "fairly good" range of motion of her cervical spine without formal range measurement. Dr. Olshen did not see a reason that Claimant needed off work. He urged her to quit smoking as that would reduce her pain. He prescribed medication for sleep management, muscle spasms, and a routine anti-inflammatory. (Tr. 275-76). Claimant reported continued neck pain in December of 2007. (Tr. 235-36).

In May of 2008, a nerve conduction study showed bilateral median neuropathies at the wrist, moderate in severity. Dr. Olshen found this to be consistent with carpal tunnel syndrome. (Tr. 222).

Claimant continued reporting neck and right shoulder pain in August of 2008 to Dr. William Anderson. (Tr. 233-34). In October of 2008, Dr. Anderson noted mild cervical spine tenderness to palpation with moderate spasms. (Tr. 231-32). In December of 2008, Dr. Anderson recommended physical therapy to alleviate neck pain. (Tr. 229-30).

In December of 2009, Claimant saw Dr. Ashley Gourd complaining of neck and shoulder pain. Dr. Gourd noted muscle spasms on either side of her neck and frequent daily headaches. (Tr. 244). Decreased range of motion with cervical flexion and extension was noted. (Tr. 245). Claimant told Dr. Gourd that she was able to complete activities of daily living for herself. (Tr. 244).

On January 25, 2010, Dr. Luther Woodcock completed a Physical RFC Assessment on Claimant. He found she could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and engage in unlimited pushing and pulling. Dr. Woodcock noted Claimant's continuing pain but found her range of motion was within normal limits except for her cervical spine which showed decreased range of motion with flexion and extension. He found Claimant suffered from carpal tunnel syndrome. Her strength was 5/5 bilaterally. She was able to

7

perform both fine and gross manipulation of objects. Claimant's heel/toe walking was normal and straight leg raising was negative. Her gait was stable and she was able to rise from a seated position without difficulty. (Tr. 265-66). Her activities of daily living included caring for her dog and cat and no problems with personal care. Her sleep was affected by neck pain. She had problems with reaching and sitting. (Tr. 266).

On September 29, 2010, Dr. Danny Silver Completed a Medical Source Statement on Claimant after reviewing medical records. He found Claimant suffered from cervical disc disease status post fusion, chronic cervical spine pain, low back pain with radiculopathy, tension headaches, right and left finger paresthesias, and depression. Dr. Silver found Claimant could sit for 15 minutes at one time and 4 hours in an 8-hour workday, stand 30 minutes at one time and 6 hours in an 8-hour workday, and walk for 15 minutes at one time and 3 hours in an 8-hour workday. He determined she could lift and carry up to 20 pounds occasionally and up to 5 pounds frequently. (Tr. 285). Claimant was found to be able to use her hands for simple grasping, pushing and pulling, and fine manipulation and use her feet for repetitive motion. She was not able to crawl or climb or be exposed to unprotected heights. Her pain was rated at moderate, noting that after 15

8

minutes of activity involving her upper extremity use, Claimant gets neck pain and pain in the back of her head followed by headaches. (Tr. 286). Dr. Silver found Claimant would have to take unscheduled breaks, would likely be absent more than four days per month from work, and would need a sit/stand/walk option at will. (Tr. 287).

At the hearing, Claimant testified she took over-the-counter pain medications for her headaches. (Tr. 32). She states that she is typically on the couch or recliner in her house. (Tr. 34). Driving is difficult because of problems turning her head. (Tr. 33). She does not fix dinner except for sandwiches. (Tr. 35). She states she is unable to clean the house. She does no yard work. Her husband does the grocery shopping. (Tr. 35). She attends church on Sundays. Once in a while, she goes to her daughter's house. (Tr. 36). She experiences problems sleeping due to neck pain. (Tr. 39).

In his decision, the ALJ found Claimant's statements to be less than credible. (Tr. 14). After Claimant's surgery, the ALJ found Claimant's pain was treated conservatively with pain medications, muscle relaxants, physical therapy, and a TENS unit. (Tr. 15). The ALJ recites the medical record and Claimant's statements to physicians that she could engage in activities of

daily living for concluding her statements were not credible. (Tr. 15). He did not doubt Claimant experience discomfort but found the record did not support a finding of debilitating pain. (Tr. 16).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

10

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Given the state of the medical record, Claimant's statements to the examining physicians and the level of treatment she obtained for relief of her pain, this Court finds no error in the ALJ's credibility findings. The question is not whether continued to experience pain but whether that pain results in an inability to engage in basic work activity. The record does not support a finding of such disabling pain.

Claimant also contends the ALJ should have included limitations relating to her carpal tunnel syndrome. The record indicates no restrictions by any of the examining physicians in any fine or gross manipulation, grasping, or extremity strength. In short, no manipulative limitations were warranted because none were identified by the professionals.

Claimant is also critical of the ALJ's rejection of Dr. Silver's opinions. Claimant visited Dr. Silver on a single occasion at the referral of her attorney. He was not a treating physician. The ALJ concluded Dr. Silver's opinions were not supported by medically acceptable clinical and diagnostic techniques and was inconsistent with other medical evidence in the

record. (Tr. 17). The ALJ's rejection of Dr. Silver's findings was not erroneous based upon the attorney referral, his findings which were inconsistent with the treating physicians' records concerning the results of Claimant's surgery, and Claimant's successful return to work after the surgery for some years. Similarly, his acceptance of the opinion of Dr. Woodcock was not erroneous based upon its consistency with the remainder of the medical record.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE